## No. 9721.

### SMILLIE v. MENDOZA.

1. PRACTICE IN ERROR—*Conflicting Evidence.* Verdict upon will not be disturbed.

2. PROMISE TO MARRY—*Breach—Evidence.* Action for breach of promise to marry; promise denied. The acts of the parties from which an inference as to their relations may be drawn, are admissible. Letters betwen the parties bearing upon the question are admissible.

3. ——*False Defamation of Plaintiff*, the charges not being made in good faith, may aggravate the damages.

4. ——*Damages—Excessive.* The courts are very unwilling to set aside a verdict in this class of cases as excessive.

5. ——*Evidence—Objections to*, by counsel of the party who is testifying in his own behalf, and upon his own motion, present no question for review.

6. ——*Wealth of Defendant,* is relevant and may be shown by any competent evidence.

7. ——*Plaintiff's Character,* may be shown, where defendant has assailed it.

8. EVIDENCE—*Competency.* Plaintiff was asked the meaning of statements contained in letters written by her. No reason for the examination being given the exclusion of the evidence was held not an abuse of discretion.

*Error to Weld District Court, Hon. George H. Bradfield, Judge.*

Mr. JAMES W. GAULT, for plaintiff in error.

Mr. WALTER E. BLISS, for defendant in error.

Mr. Justice Teller delivered the opinion of the court.

DEFENDANT in error had judgment against plaintiff in error in an action for breach of promise to marry, and the latter brings error.

The first assigned error which is argued is that the verdict is not supported by the evidence. Plaintiff testified that she and defendant agreed to marry; he says they discussed it but never entered into a contract to marry. There are many letters in evidence, written by the parties from which the jury might well conclude that plaintiff's testimony was more credible than that of defendant. The verdict was rendered on a conflict of evidence, and will not be disturbed.

It is urged, also, that the letters above mentioned were not admissible, and that doubtless they influenced the findings of the jury in favor of the plaintiff. The fact that marriage contracts are generally oral, and made without witnesses, has long been recognized by the courts, and the rule is well settled that evidence of the acts of the parties from which an inference may be fairly drawn as to their relations is admissible in suits of this kind. *Leckey v. Bloser,* 24 Pa. St. 401; *Rime v. Rater,* 108 Iowa 61; *Crosier v. Craig,* 54 N. Y. Supreme 83 (47 Hun.) ; *Vaughan v. Smith,* 177 Ind. 111; Elliott on Evidence, Sec. 1869.

Certainly correspondence between the parties about the time of the alleged engagement may contain matters from which an inference might be drawn as to the alleged contract. Such letters have been held admissible in several cases. *Geiger v. Payne*, 102 Iowa 581; *Richmond v. Roberts*, 98 Ill. 472; *Tefft v. Marsh*, 1 W. Va. 38. The letters in this case came clearly within the rule, as tending to throw light upon the issue of promise or no promise, and there was no error in their admission.

The judgment is attacked on the ground that it is based upon what is known as "a quotient verdict." On the hearing of the motion for a new trial, the court had before it affidavits of five of the six jurors on the question of how they reached their verdict, and denied a new trial. That was a finding against the defendant's contention which we cannot say was not justified by the evidence presented on that point. We are, therefore, bound by such finding. *Florence & C. C. R. R. Co. v. Kerr*, 59 Colo. 539. The same may be said of the charge that the jury was influenced by remarks of persons attending the trial.

It is urged that the verdict, $7,500.00 is the result of passion and prejudice on the part of the jury, for which reason the judgment ought not to stand. The defense was a denial of the promise, and a charge that the plaintiff was "unchaste, lewd and immodest," at the time of the alleged making of the promise. The court instructed the jury that if they found said charge was not made in good faith and had not been proved, they might consider such attack on plaintiff's character in assessing her damages. The instruction was correct. *Fleetford v. Barnett*, 11 Colo. App. 77. We are not at liberty, therefore, to consider the verdict with reference only to what might be considered fair compensatory damages on the evidence. The amount of damages to be allowed in an action of this kind is a question peculiarly within the power of the jury, and courts are very unwilling to set aside a verdict on the ground that it is excessive. *Richmond v. Roberts, supra;* 9 C. J. 382. In *Salchert v. Reinig*, 135 Wis. 194,

the court said: "The translation into terms of money of those peculiarly indefinite damages which result from a breach of such a contract is so a matter of estimate that courts of appeal are extremely reluctant to interfere with the conclusion of the jury thereon." We find nothing to indicate that the verdict was due to passion or prejudice on the part of the jury.

Error is alleged also in the admission of testimony as to the details of defendant's property holdings. The objection is, that in admitting evidence as to defendant's property, the court violated the rule which prohibits, as counsel says, "specific evidence as to the value of particular pieces of property." The record does not show that such rule, if it exists, was violated, nor does it appear that counsel who tried the case for defendant made the objection now made by counsel. The question propounded to defendant was, "How much property did you own on June 1st or 2nd, 1917?" Counsel for defendant objected "as incompetent and immaterial in this case." Plaintiff's attorney then stated to the court that the evidence was offered "for the purpose of enlightening the jury as to the standing this plaintiff would have had in the community where she would have resided if the marriage had taken place, and also to inform the jury of the financial advantage to her the marriage would have caused and for the general information of the jury." In answer to the above question defendant stated that he sold a piece of property, describing it, and was then asked for how much he sold it. His counsel then stated that he wanted his objection to go to all these questions and said "he is going into specific questions now, he is specifying certain pieces of property and going into detail." That objection applied in fact to the answers made by defendant and not to the questions. It was made after the former objection had been overruled and when there was, as the court stated, nothing before the court.

In objecting to the next question, counsel said that he wanted it noted that his objections went to all the ques-

tions and answers on the ground that they are incompetent, irrelevant and immaterial and for the further reasons that they are hearsay "and the other reasons I have heretofore stated." The abstract then gives in narrative form the testimony of defendant as to property holdings, his disposition of the same, the amount received and the debts he paid. At the close of that testimony upon that point, defendant's counsel again stated that he objected to all questions and answers in regard to real property and to the entire line of cross examination. Nowhere did he call to the court's attention the rule, for which present counsel contend, that the evidence must be confined to general reputation as to material wealth. The objection was clearly not to the mode of proof, but to the admissibility of evidence as to plaintiff's wealth.

However that may be, we do not agree with counsel that the rule which he invokes is sustained by the weight of authority. In *Birum v. Johnson*, 87 Minn. 362, the court affirmed a judgment where evidence as to actual wealth as well as reputation as to it was received, over objections. The court seems to regard the admission of evidence of reputation as to wealth as permitted because of the difficulty of showing actual wealth. The rule is that a fact should be proved by the best obtainable evidence; why, then is it not competent to prove one's wealth by his own testimony as to his holdings, rather than on reputation which may be wide of the mark? Upon that reasoning the court in *Crosier v. Craig, supra,* affirmed a judgment in a case where it was assigned as error that two witnesses had been allowed to testify as to the actual value of defendant's lands. The court said that inasmuch as the defendant might show the actual value of his property as against evidence of his reputed worth, it was competent to show such value in the first instance. It is there pointed out that in *Kniffen v. McConnell* 30 N. Y. 285, a case relied upon by plaintiff in error, the objection was to any evidence as to defendant's wealth, and not to the mode of proof. The statement by the court that evidence

should be confined to general reputation was mere *dictum*. That it was so regarded by the Court of Appeals is shown by the fact that it affirmed *Crosier v. Craig*, in 130 N. Y. 661. In *Rime v. Rater, supra*, evidence as to the earnings of defendant was held admissible.

In *Vierling v. Binder*, 113 Iowa 337, the court says it is common practice to allow specific evidence as to defendant's pecuniary circumstances. See to the same effect *Vaughan v. Smith, supra; Hanson v. Johnson*, 141 Wis. 550; *Clark v. Hodges*, 65 Vt. 273; Elliott on Evidence, Sec. 1888; Vol. 2, Encyc. of Evidence, p. 749. It is well settled that, in this class of cases, the financial condition of the defendant may be shown; for obviously his pecuniary circumstances, as well as his social position, would influence any one's estimate of the damages suffered. That being true, there is no apparent reason why any competent evidence to show what his pecuniary circumstances are would not be admissible.

Counsel urge that the jury might measure the damages by the proved financial worth of the defendant. Inasmuch, however, as it is everywhere held that the evidence as to defendant's pecuniary circumstances is admitted, as bearing upon the question of damages, the objection seems to be not well founded.

It is further urged that the court erred in admitting evidence of plaintiff's good character. The authorities cited hold only that a charge of specific acts of unchastity may not be met by evidence of good character. Here, however, the answer contained an attack upon the plaintiff's character, as had already been stated, and defendant, in support of that allegation, testified to a situation from which unchastity would be inferred. Moreover, defendant testified to other matters tending to show that plaintiff was keeping a house of assignation. To meet that testimony evidence of plaintiff's good reputation was certainly competent. In *McKane v. Howard*, 202 N. Y. 181, a breach of promise case, the complaint alleged specific acts from which the conclusion of bad character in-

evitably followed. The defendant's evidence was in support of those allegations, and not to prove a general bad character. The court held evidence of good character admissible. On principle and authority we hold that there was no error in the admission of the evidence of character.

It is contended, also, that the court erred in sustaining objections to defendant's cross examination of plaintiff on her letters which were in evidence. The questions were directed to the meaning of certain statements in the letters. They were not intended to clear up ambiguities, and since no reason is given for them, we cannot say that the court abused its discretion in excluding them.

Objection is made to an instruction which told the jury that they might consider the letters in evidence in determining whether or not there was an express promise to marry. Letters, otherwise competent, are admitted for the purpose stated in the instruction. It did not emphasize the importance of the letters, and the objection to it is without weight.

Finding no error in the record, the judgment is affirmed.

Chief Justice Garrigues and Mr. Justice Burke concur.