Inez Merritt, Appellee, v. M. P. Leuck, Appellant.

No. 45371.

FEBRUARY 10, 1942.

REHEARING DENIED JUNE 19, 1942.

Dan J. Buckley and Welch, Acrea & Welch, for appellant.
Cullison & Hurley, for appellee.

HALE, J.—Plaintiff's petition, filed May 25, 1939, alleged an oral agreement with defendant to marry, on or about August 1928; her willingness at all times to marry him, and his failure to carry out his contract; that such promise was constant and continuous and she relied thereon until on or about January 1939, when she discovered that defendant had, in August 1938, married another, which fact he concealed; and that by such false promise she was deceived, seduced, and debauched; and that, relying on such promise, plaintiff has remained single, and has suffered injury, and asks recovery of actual and punitive damages. Defendant's answer admits his marriage to a person other than plaintiff; alleges plaintiff was unchaste, which he did not know until November 1937; and denies generally. Further, for the purpose of conforming the pleadings to the proof, he pleads, if there was such promise, an oral release by plaintiff. Trial was had, verdict rendered for plaintiff, and defendant's motion for judgment notwithstanding verdict, motion for new trial and exceptions to instructions, were overruled, and defendant appeals.

It is unnecessary to set out in detail the evidence except

as it pertains to the errors charged. Plaintiff, in 1928, was employed as a waitress and lived with her parents in Harlan. She testifies that in May of that year she met the defendant, that she "kept company" with him continuously; that in the summer of that year he proposed marriage; that he made protestations of love and affection, and suggested that they be married when his means would permit. She testified, and defendant in his testimony did not deny, that they went together for more than ten years. He bought her presents, and, as she did not belong to his church, he gave her instructions and books relating to his church, which she agreed to join. She visited his family, attended his mother's and father's funerals, and his brother's wedding. He wrote her affectionate letters, some of which were in evidence, showing his love for her and the child born to her. In the summer of 1928, according to her testimony, their sexual relationship began, at defendant's solicitation and promise and understanding of marriage; such relations continued, and as a result she twice became pregnant and had two abortions, and as a result of a third pregnancy a girl child was born to her on May 27, 1938, in Colorado. Defendant married another woman August 8, 1938, but plaintiff testified she did not discover this fact until the following January. Defendant denies any promise to marry plaintiff; denies that he was sexually intimate with her and that he is the father of her child. While admitting writing love letters, he testifies that they were not seriously intended, but "idle prattle," and denies that he ever loved her. He testified further to an oral release on May 27, 1938, which she denied.

The case was called for trial November 1, 1939. Plaintiff testified at length to facts the substance of which is given above. Other witnesses testified as to corroborating facts, and several letters from defendant were introduced. There was ample evidence to submit to the jury the questions of breach of promise and seduction. No motion for directed verdict was made.

I. Defendant's first claim of error was in overruling his objection to displaying plaintiff's child to the jury. The girl, then about 18 months old, was present with her mother

during the trial, and plaintiff, against the objection of defendant, was permitted to testify as to the child's paternity. There was no calling attention or reference to the physical resemblance between the child and its alleged father. Under these circumstances, under our rules there was no error. Cases cited by plaintiff are: State v. Clemons, 78 Iowa 123, 42 N. W. 562; State v. Hunt, 144 Iowa 257, 122 N. W. 902; State v. Stark, 149 Iowa 749, 129 N. W. 331, Ann. Cas. 1912D, 362; all of which support plaintiff's argument that there is not error unless the child is offered on the question of resemblance. In State v. Danforth, 48 Iowa 43, 30 Am. Rep. 387; State v. Smith, 54 Iowa 104, 6 N. W. 153, 37 Am. Rep. 192; State v. Harvey, 112 Iowa 416, 84 N. W. 535, 52 L. R. A. 500, 84 Am. St. Rep. 350; State v. Meier, 140 Iowa 540, 118 N. W. 792, cited by defendant, the error consisted in so offering the child. The record here does not disclose any reference to or offer to show any supposed resemblance. Both parties cite 40 A. L. R. 120, which discusses quite thoroughly the differing rules prevailing in different states. But the rule seems established in Iowa as stated. Also defendant's letters, in which he frequently mentioned the child, were in evidence. From these letters we gather that there was a resemblance between defendant and the child, especially as to the color of hair, evidence of which is supplied by defendant himself in such letters. We find no error here.

II. Defendant objects to the court's instruction No. 9. This instruction first sets out the claim of plaintiff as to seduction in aggravation of damages. It then defines seduction, giving previous chaste character as an element, and tells the jury that if they find seduction it may be considered on the question of whether there was a promise of marriage and also in aggravation of damages. It next states that defendant had pleaded that plaintiff was in 1937 a woman of unchaste character, but that in the judgment of the court he had not established such claim, and that the jury could not consider such claim in mitigation of damages, but could consider that question in determining whether or not plaintiff was seduced by defendant.

We do not think that the use of the phrase as to claim of plaintiff that she "lost her virtue" goes to the extent of alleg-

ing previous chastity. In ordinary language, as here used, it means that she submitted to intercourse, and the jury could not have misunderstood what was intended. In its definition of seduction the instruction is more favorable to the defendant than he is entitled. The plaintiff did not plead previously chaste character. Such issue was tendered by defendant. And previous chaste character is not a necessary element in a civil action for seduction. Gardner v. Boland, 209 Iowa 362, 366, 227 N. W. 902, 904; Olson v. Rice, 140 Iowa 630, 119 N. W. 84; Wilson v. Mangold, 154 Iowa 352, 134 N. W. 1072. The defendant having so charged, in a matter not necessary to plaintiff's right of recovery, it would be unfair to place the burden to disprove this charge upon plaintiff. The rule was approved that the jury should treat prosecutrix as having been virtuous before the alleged seduction, unless the evidence, direct or circumstantial, satisfied them that she had lost her virtue by having illicit intercourse. See Washington v. State, 124 Ga. 423, 52 S. E. 910. And see, McTyier v. State, 91 Ga. 254, 255, 18 S. E. 140. In the latter case, a statement in an instruction that: "The presumption of the law is that the female alleged to have been seduced was virtuous, and that presumption remains until removed by proof", was approved. In the absence of any evidence to the contrary, the presumption of law is in favor of her chastity. 57 C. J. 29, section 75.

The court was right in stating that defendant had not established his claim that plaintiff was, in 1937, of unchaste character. The evidence on that question is only by defendant, and his entire testimony, on direct or cross-examination, reduced itself to a mere charge. He states:

"I don't know that she had sexual relationships with anybody else. I know that she went with traveling salesmen. I have seen her with one. I can't mention names. I can't say that I ever saw her under any circumstances where she might have had illicit relationships with anyone else."

Other testimony was given, much of the same indefinite character. The court was right in holding such evidence insufficient. The defendant cannot now complain, having raised the question, of an instruction thereon more favorable to him than that to which he was entitled.

III. Defendant objects to instruction No. 8, in which the court stated the elements of damage which the jury might consider, including disappointment, mortification, humiliation, and other matters. Defendant does not argue to any great extent the matters which were submitted, but calls attention to the use of the word "damages" instead of "advantages." In the connection in which it is used we think the jury could not in any way be misled by the court's stating as one element "the loss of worldly and pecuniary damages, including a home and the comforts thereof." We think the instruction was justified and has the sanction of our authorities. Royal v. Smith, 40 Iowa 615, which permitted as one element "personal pain and mortification"; Lauer v. Banning, 152 Iowa 99, 131 N. W. 783, where seduction was considered as aggravation; Holloway v. Griffith, 32 Iowa 409, 7 Am. Rep. 208, where pecuniary advantages might be considered, as in McKenzie v. Gray, 143 Iowa 112, 120 N. W. 71. In Rime v. Rater, 108 Iowa 61, 78 N. W. 835, an instruction including mental suffering was approved. See also, McKee v. Mouser, 131 Iowa 203, 108 N. W. 228, and Morgan v. Muench, 181 Iowa 719, 156 N. W. 819. We think there is no merit in the objection to the instruction.

IV. The next error relied upon for reversal consists in the court's overruling defendant's motion for a new trial, which alleged that the verdict was unsupported by evidence and that plaintiff is not entitled to more than nominal damages, and that the evidence does not show any seductive arts or promises. This motion was rightly overruled as to these grounds. Not only was there evidence by the plaintiff of an express promise of marriage, but there was evidence as to surrounding circumstances which bore directly on that question. In Fisher v. Bolton, 148 Iowa 651, 654, 127 N. W. 979, 981, the rule is stated that:

"For the purpose of such an action as this, a promise of marriage need not be proved in express terms, nor by direct evidence."

There is evidence tending to sustain plaintiff's claim of an understanding and agreement of marriage during the period

in which the parties were going together, and, as to damages, we have heretofore summarized some of the evidence, and we hold that the cause was properly submitted to the jury.

■ V. Defendant next argues that the court should have granted his motion for more specific statement, in which he asked that plaintiff be required to allege how much of her claim was for breach of promise and how much for seduction and debauching. This was not necessary and there was no error in refusing it. See Rime v. Rater, supra, wherein it is said at page 67 of 108 Iowa, page 837 of 78 N. W.: "Proof of specific elements of damage was not required." The seduction in this case was an aggravation of damage for the breach of promise.

■ VI. Error is assigned in overruling defendant's motion to withdraw from the consideration of the jury the evidence in relation to abortions. This testimony was admitted without objection and was proper to be considered in connection with all the other evidence as to the conduct of the parties. It was not given to the jury as an element of damage. There was no error here.

We have examined all the assignments of error which the defendant has called to our attention and find none which would require a reversal. No complaint is made as to the amount of the verdict, and in our opinion the case should be affirmed.—Affirmed.

BLISS, C. J., and STIGER, SAGER, OLIVER, MILLER, GARFIELD, and WENNERSTRUM, JJ., concur.